UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

NED JAMES III,              )
                            )
        Plaintiff,           )
                            )
v.                          )      14-2283
                            )
C/O DYER, *et al.*           )
                            )
        Defendants.          )

## SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and presently incarcerated at Menard Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging a failure-to-protect claim arising from his incarceration at Jerome Combs Detention Center. The matter comes before this Court for ruling on the Defendants' Motions for Summary Judgment. (Doc. 26). The motion is granted.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the

non-moving party, and all reasonable inferences must be drawn in his favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS

At all times relevant, Plaintiff was an inmate at Jerome Combs Detention Center ("JCDC" or "jail"). Defendants are both correctional officer at JCDC.

Plaintiff arrived at JCDC on May 22, 2014 after being transferred from Cook County Jail. According to Plaintiff, he and other inmates were transferred because of their classifications as violent individuals. (Doc. 8 at 5, ¶¶ 6-8) (Plaintiff and assailant were extremely dangerous individuals). Upon arrival, JCDC officials

classified Plaintiff as maximum risk and assigned him to a cell block known as Max A.  Prior to the incident in question, Plaintiff had never had any type of altercation with his assailant, or his assailant's roommate.  (Doc. 26-2 at 1, ¶ 2).

Max A contains ten (10) cells divided equally into an upper and lower tier.  The tiers are connected via a stairway, and the pod houses a maximum of 20 inmates (two per cell).  At certain times during the day, inmates are allowed to enter the day room on the lower level.  Due to the limited amount of space, inmates are allowed use of the day room in shifts—only about half of all inmates are allowed into the day room at any given time.  If not in the day room, inmates remain in their cells.

On May 26, 2014, Plaintiff was watching television in the day room.  While doing so, Plaintiff got involved in an argument with another inmate in a cell, presumably about television programming.  A video of the incident shows Plaintiff approach the other inmate's cell multiple times and return to his seat in front of the television.  At some point thereafter, the door to the other inmate's cell was opened and a fight ensued.  The fight was broken up shortly thereafter.

The Defendants were the correctional officers responsible for supervising Max A on May 26, 2014. Defendant Dyer opened the other inmate's cell door from the control booth prior to the fight. According to Defendant Dyer, the other inmate's cell mate had advised of toilet problems and Defendant Dyer "popped" the cell door to allow the cell mate to get the needed plumbing items. Defender Dyer avers that he was unaware of any problems between Plaintiff and the other inmate prior to the fight, and even Plaintiff testified that he did not expect a fight to occur. Pl.'s Dep. 41:1-2 (Plaintiff said to the assailant while arguing, "[y]ou ain't going to do nothing and you ain't going to do nothing and whatever."); 42:16-17 (to assailant: "I'm not scared of you.").

## ANALYSIS

Plaintiff was a pretrial detainee while housed at JCDC. Therefore, Plaintiff's claim arises under the Fourteenth Amendment, rather than the Eighth Amendment's proscription against cruel and unusual punishment. Mayoral v. Sheahan, 245 F.2d 934, 938 (7th Cir. 2001). Despite this distinction, there exists "little practical difference between the two standards." Id. (quoting Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000)).

To succeed on a failure to protect claim, a plaintiff must show (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and, (2) prison officials acted with "deliberate indifference" to that risk.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  For purposes of satisfying the first prong, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Id. at 843.  A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.  A plaintiff "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996) (quoting McGill v. Duckworth, 944 F.3d 344, 349 (7th Cir. 1991)).  Liability attaches where "deliberate indifference by prison officials effectively condones the attack by

allowing it to happen...." Haley v. Gross, 86 F.3d 630, 640 (7th Cir. 1996).

Prior to Plaintiff's placement in Max A, prison officials had no indication that the inmate who attacked Plaintiff posed a substantial threat of harm to Plaintiff. Plaintiff agreed that he had no altercations with his assailant prior to May 26, 2014. There existed no indications in Plaintiff's file that he should be kept separate from this particular inmate.

Plaintiff asserts that the Defendants should not have opened his assailant's cell door and, if they had not, the attack would not have occurred. This may be true, but Plaintiff has not shown how an argument over television programming alerted jail officials that an attack was imminent—Plaintiff testified that inmates argue all the time about small things. Pl.'s Dep. 40:9-12 ("Guys be locked up, they get frustrated. You argue about the littlest thing.").

By Plaintiff's own admission, he did not believe that his assailant would follow through with his threats of harm, and when confronted, Plaintiff did not attempt to notify jail officials of a problem—he prepared to fight. Id. 48:22-23 ("He came and addressed the problem. Let's get it."); 50:1-3 ("Q: And when he said

what you saying, he was a mad about something you had said to him, right?  A: Yeah.  Man, let's get it.").

Defendant Dyer's decision to open the cell door may not have been the best decision in hindsight, but nothing in the record suggests that he did so deliberately or with an intention that Plaintiff get harmed.  At best, the actions were negligent, but negligence is not sufficient to attach constitutional liability. Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("[T]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials.").  Therefore, the Court finds that no reasonable juror could conclude that Defendants Dyer and Littrell violated Plaintiff's constitutional rights.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Status [33] is GRANTED insofar as it seeks a status, and DENIED as to any other relief requested.  This Opinion resolves all outstanding motions and the case will be closed as detailed below.**

2) **Defendants' Motion for Summary Judgment [26] is GRANTED.  The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff.  All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.  Plaintiff remains responsible for the $350.00 filing fee.**

3) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. See Fed. R. App. P. 24(a)(1)(c); see also Celske v Edwards, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED:    July 1, 2016

FOR THE COURT:

*s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE